ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
HOWARD LORING ROSE, #251727
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com
loring.rose@gmlawyers.com

Attorneys for Plaintiff
ROBIN GOOLSBY,
on behalf of herself and all others
similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN GOOLSBY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ANTHEM, INC.; ANTHEM UM SERVICES, INC.,<br><br>Defendants. | Case No.: 2:19-cv-00392-DSF (KSx)<br>Assigned to Hon. Dale S. Fisher, Dep. 7D<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:    May 18, 2020<br>TIME:    1:30 p.m.<br>PLACE: Courtroom 7D<br><br>Complaint Filed: January 17, 2019 |

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 18, 2020 at 1:30 p.m. in Courtroom 7D of the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiff will move the Court for an order certifying the class and preliminarily approving the proposed settlement, attached as Exhibit 1 to the Declaration of Robert S. Gianelli, submitted herewith, approving issuance of notice to the class, and setting a hearing for final approval of the settlement.

This motion is based on this notice, the attached memorandum of points and authorities, the Declaration of Robert S. Gianelli and the attached settlement agreement and exhibits thereto, the Court's files and records in this action, and upon such other evidence and argument as may be presented at the hearing.

DATED: April 17, 2020                                    GIANELLI & MORRIS


                                    By:    */s/ Adrian J. Barrio*
                                           ROBERT S. GIANELLI
                                           JOSHUA S. DAVIS
                                           ADRIAN J. BARRIO
                                           HOWARD LORING ROSE
                                           Attorneys for Plaintiff
                                           ROBIN GOOLSBY

1

# **TABLE OF CONTENTS**

*Page Number(s)*

MEMORANDUM OF POINTS AND AUTHORITIES…………………………….1

I.      INTRODUCTION…………………………………………………………..1

II.     SUMMARY OF THE LITIGATION…………………………………..…2

    A.      Relevant procedural history…………………………..………..2

    B.      Investigation and extent of discovery completed………………………4

    C.      Mediation and negotiation of the Settlement…………………………...5

III.    THE PROPOSED SETTLEMENT…………………………………...…5

    A.      Relief for class members…………………………………………..5

    B.      Released claims…………………………………………………6

    C.      Notice………………………………………………………...7

    D.      Attorneys' fees……………………………………………………7

IV.     ARGUMENT………………………………………………………..…7

    A.      The proposed class meets the requirements of Rule 23………………...7

        1.      Rule 23(a) requirements…………………………………....8

            a.      Numerosity………………………………………8

            b.      Commonality…………………………………...9

            c.      Typicality……………………………………...10

            d.      Adequacy……………………………………...10

        2.      Rule 23(b)……………………………………………11

         a.     Rule 23(b)(1)……………………………………………..1

         b.     Rule 23(b)(2)…………………………………………….12

   B.    The proposed settlement warrants preliminary approval……………....13

    1.  The settlement is the product of good faith, informed, arm's-length
negotiations between experienced counsel…………………………14

    2.  The settlement obtains the relief sought by the class demonstrating
beyond question that the Settlement is within the range of
reasonableness………………………………...…………………………15

    3.  No preferential treatment for the class representative…………..…..16

    4.  The views of experienced counsel……………………………16

V.     PROPOSED SCHEDULE………………………………………………17

VI.    CONCLUSION……………………………………………………18

1

# TABLE OF AUTHORITIES

2

**CASES**

3

<u>***Page Number(s)***</u>

4

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001)……………………………………………………10

5

6

*Baby Neal for and by Kanter v. Casey,*
   43 F.3d 48 (3d Cir. 1994)……………………………………………..……12

7

8

*Bublitz v. E.I. Du Pont de Nemours and Co.,*
   202 F.R.D. 251 (S.D. Iowa 2001)……………………………………...………9

9

10

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992)……………………………………………….13

11

12

*Des Roches v. California Physicians' Service,*
   320 F.R.D. 486 (N.D. Cal. 2017)……………………………………….....…8

13

14

*Escalante v. California Physicians Service dba Anthem of California,*
   309 F.R.D. 612 (C.D. Cal. 2015) …………………………..………..9,10,11,17

15

16

*Gen. Tel. Co. of Southwest v. Falcon,*
   457 U.S. 147 (1982)…………………………………………………………10

17

18

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998)…………………………………..………14

19

20

*Horn v. Wholesale Grocers, Inc.,*
   555 F.2d 270 (10th Cir. 1977)………………………………….…………9

21

22

*In re Tableware Antitrust* Litig.,
   484 F.Supp.2d 1078 (N.D.Cal.2007)………………………………………14

23

24

*Jackson v. Danberg,*
   240 F.R.D. 145, 147 (D. Del. 2007)……………………………………………9

25

*Johnson v. California,*
   543 U.S. 499 (2005)……………………………………………...………10

26

27

*Martial v. Coronet Ins. Co.,*
   880 F.2d 954 (7th Cir. 1989)………………………………………………...8

28

*Mazza v. Am. Honda Motor Co.*,
 666 F.3d 581 (9th Cir. 2012)……………………………………...………9

*McMillon v. State of Hawaii*,
 261 F.R.D. 536 (D. Haw. 2009)……………………………………..………9

*Moeller v. Taco Bell Corporation*,
 220 F.R.D. 604 (N.D. Cal. 2004)…………………………………….……8

*Officers for Justice v. Civil Serv. Comm'n.*,
 688 F.2d 615 (9th Cir. 1982)……………………………………2,14

*Otey v. CrowdFlower, Inc.*,
 2014 WL 1477630 (N.D. Cal. 2014)…………………………...………14

*Parra v. Bashas', Inc.*,
 536 F.3d 975 (9th Cir. 2008)………………………………………..9

*Parsons v. Ryan*,
 754 F.3d 657 (9th Cir. 2014)…………………………………..9,12

*Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*,
 85 F.3d 455 (9th Cir. 1996)……………………………………..8

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003)……………………………………11

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011)……………………………………....8

*Weinberger v. Thornton*,
 114 F.R.D. 599 (S.D. Cal. 1986)……………………………………10

*Weiss v. New York Hospital*,
 745 F.2d 786 (3d Cir. 1984)……………………………………..………8

*Wit v. United Behavioral Health*,
 317 F.R.D. 106 (N.D. Cal. 2016)……………………………………8

*Z.D. ex rel. J.D. v. Group Health Cooperative*,
 2012 WL 1977962 (W.D. Wash. June 1, 2012)……………………....12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Zinser v. Accufix Research Institute, Inc.*,
     253 F.3d 1180 (9th Cir. 2001)……………………………………………..11

**STATUTES**

29 C.F.R.
     § 2560.503-1………………………………………………...………12

28 U.S.C.
     § 1715………………………………………………………17

29 U.S.C.
     § 1132……………………………………………………….……2

Federal Rules of Civil Procedure
     Rule 23………………………………………………..………*passim*

**SECONDARY AUTHORITIES**

Manual for Complex Litigation (4th ed. 2004)
     § 21.632……………………………………………...…2,13

Newberg on Class Actions, (5th ed. 2016)
     § 13.13…………………………………………………......1,2,13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case concerns Anthem's categorical denial of tumescent liposuction to treat lipedema as "cosmetic" and excluded from coverage. Plaintiff Robin Goolsby ("Plaintiff" or "Goolsby") and defendants Anthem, Inc. and Anthem UM Services, Inc. (jointly, "Anthem" or "Defendants") have agreed to settle this case on the terms set forth in the Settlement Agreement ("the Settlement") attached as Exhibit 1 to the Declaration of Robert S. Gianelli ("Gianelli Decl."), filed herewith.

The Settlement followed major policy changes from Anthem directly resulting from this litigation. Some eleven months after this action was filed, Anthem changed its "cosmetic" coverage position with respect to tumescent liposuction to treat lipedema to provide that such treatment is medically necessary and covered if certain criteria are met.

Anthem's post-litigation reversal of its coverage position is built into the Settlement. Anthem has agreed not to change its revised position on the status of tumescent liposuction unless such change is warranted by a change in the medical literature and medical community's views.

In addition, Anthem will: 1) allow Anthem members whose requests for tumescent liposuction to treat lipedema were previously denied to have those requests re-reviewed under a revised coverage guideline known as a "Medical Policy"; and 2) review future requests for tumescent liposuction to treat lipedema under the revised Medical Policy.

Goolsby respectfully requests the Court to preliminarily approve the Settlement, which provides substantially all of the relief requested in the Complaint. At the preliminary approval stage, the Court makes only a preliminary determination of the Settlement's fairness, reasonableness, and adequacy so that notice of the Settlement may be given to the class and a fairness hearing may be scheduled to make a final determination about the Settlement's fairness. *Newberg on Class*

*Actions*, § 13:12 (5th ed. 2016); *Manual for Complex Litigation* (4th ed. 2004) § 21.632. In so doing, the Court simply reviews the Settlement to determine that it is not collusive and, taken as a whole, is fair, reasonable, and adequate to all concerned. *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982).

The Settlement easily meets this standard. It is the product of extensive, arm's-length negotiations between the parties, was assisted by an experienced, well-respected mediator, and will fairly resolve this case. Indeed, the Settlement achieves substantially all of the relief sought in the Complaint so a victory at trial for the class would provide no additional benefit.

Plaintiff therefore respectfully requests that the Court enter the [Proposed] Order Granting Motion for Preliminary Approval of Class Action Settlement, direct issuance of Notice of Proposed Settlement of Class Action and Final Approval Hearing to the Identified Class Members, and set a Final Approval Hearing to consider whether to grant final approval of the settlement, and the motion by Goolsby and class counsel for an award of attorneys' fees and expenses and an incentive award for the class representative.

## II.    SUMMARY OF THE LITIGATION

### A.    Relevant procedural history.

On January 17, 2019, Goolsby filed this ERISA class action case against Anthem, Inc. and Anthem UM Services, Inc. (collectively, "Anthem") seeking declaratory and injunctive relief on behalf of the class pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) and an individual claim for benefits under 29 U.S.C. § 1132(a)(1)(B). (Dkt. 1.)

The Complaint alleges that: Defendants categorically deny all requests for tumescent liposuction to treat lipedema on the basis that the procedure is "cosmetic" under its extracontractual internal guideline, ANC.00009, a Medical Policy regarding cosmetic and reconstructive issues of the trunk and groin, (Dkt. 1, ¶¶ 10-19); Defendants denied Goolsby's request for lumbar ADR on this basis (*id.*, ¶¶ 20-26);

and, contrary to Defendants' position, tumescent liposuction is not "cosmetic." It is medically necessary because the purpose of the surgery is to treat a progressive, debilitating disease—lipedema—not make patients look better. (*Id*., ¶ 19.)

The primary relief requested by Plaintiff is an injunction requiring Anthem to provide notice to members who have had requests for tumescent liposuction to treat their lipedema denied, to re-review the denied claims under the proper standard, and make payment where appropriate. (*Id*. at ¶ 48.) (*Id*.)

On or about March 1, 2019, the parties stipulated to an extension of time for Defendants to respond to the Complaint, and for Goolsby to file a motion for class certification, to permit the parties the opportunity to pursue informal settlement discussions. (Dkt. 16.) The Court granted the stipulation on March 4, 2019, giving Defendants until June 12, 2019 to respond to the Complaint and giving Goolsby until August 5, 2019 to file a motion for class certification. (Dkt. 17.)

On May 30, 2019, the parties stipulated to a further extension of time for Defendants to respond to the Complaint and for Goolsby to file a motion for class certification in order that the parties could continue their informal settlement negotiations. (Dkt. 18.) On May 31, 2019, the Court granted the parties' stipulation, giving Defendants until August 12, 2019 to respond to the Complaint and Goolsby until October 4, 2019 to file a motion for class certification. (Dkt. 19.)

On July 25, 2019, having made progress on their settlement negotiations following a mediation with Edwin Oster, Esq., the parties stipulated to a further extension of time for Defendants to respond to the Complaint and for Goolsby to file a motion for class certification. (Dkt. 20.) On July 26, 2019, the Court granted the parties' stipulation, giving Defendants until November 11, 2019 to respond to the Complaint and Goolsby until January 26, 2019 to file a motion for class certification. (Dkt. 21.)

Despite their best efforts, the parties were unable to settle this case before Defendants' response to the Complaint came due. Defendants advised that they

intended to file a Motion to Dismiss, and following meet and confer efforts, the Complaint was amended on November 11, 2019 to clarify that Goolsby's health plan is subject to ERISA, a technical issue. (Dkt. 27.) The core allegations were unchanged.

Defendants filed a Motion to Dismiss the First Amended Complaint on November 25, 2019. (Dkt. 28.) That motion was pending at the time the parties' reached settlement.

### B.   Investigation and extent of discovery completed.

The parties' settlement occurred over a year after this action was filed and was well informed by the discovery and investigation completed up to that point. (Gianelli Decl., ¶ 14.) As noted above, shortly after this action was filed, the parties entered into informal yet intensive settlement negotiations that lasted several months. (*Id.*) As part of these settlement efforts, the parties exchanged substantial information on an informal basis regarding the class and merits issues of this case. (*Id.*)

In addition, from the inception of this action (and indeed as a precursor to the filing of this action), Plaintiff's counsel met and extensively conferred with experts concerning the efficacy of tumescent liposuction to treat lipedema and the medical literature addressed to this topic. (*Id.*, ¶ 15.) As part of the informal settlement negotiations, the parties exchanged information concerning the efficacy of tumescent liposuction to treat lipedema. (*Id.*)

Plaintiff's informal fact gathering was supplemented by formal discovery efforts. (*Id.*, ¶ 16.) Beginning in February of 2019, Plaintiff served comprehensive discovery (inspection demands, interrogatories, and requests for admissions) addressed to the class and merits issues in this case. (*Id.*) At the time of settlement, Anthem had produced over 450 pages of responsive information, in addition to interrogatory responses and responses to Plaintiff's requests for admissions. (*Id.*) Plaintiff's counsel also took the deposition of Anthem's corporate designee ("Person Most Knowledgeable") to address the class data issues. (*Id.*)

4

**C.    Mediation and negotiation of the Settlement.**

As the above discussion makes clear, the parties' attempts to settle this case began in short order after this case was filed, entailed the robust exchange of information (including expert information), and spanned the length of the case. To assist in their settlement efforts, the parties attended a mediation on July 16, 2019 before an experienced and well-respected mediator, Edwin Oster, Esq. of Judicate West. (Gianelli Decl., ¶ 17.) The mediation involved intense, arm's-length negotiations. (*Id*.) But despite the parties' best efforts, the mediation did not result in a settlement. (*Id*.)

The parties continued to pursue settlement following the July 16, 2019 mediation and engaged in continuing telephone discussions through the mediator. (Gianelli Decl., ¶ 18.) After several months of continued, arm's-length negotiations, the parties advised the Court on February 27, 2020 that there had been a resolution of one of the major issues in the case, namely a revised version of ANC.00009 that covers liposuction to treat lipedema, and were in the process of negotiating the remaining outstanding issues, and a long form settlement agreement. (Dkt. 33; Gianelli Decl., ¶ 18.) The remaining outstanding issues, and the long form settlement agreement, have now been finalized. (*See* Ex. 1 to Gianelli Decl.; Gianelli Decl. at ¶ 18.)

The informed view of experienced class counsel is that the proposed settlement is fair, reasonable, and adequate and easily meets the criteria for preliminary approval. (Gianelli Decl., ¶ 19.) The Settlement achieves substantially all of the relief requested in the complaint and trial would afford no further benefit. (*Id*.)

**III.    THE PROPOSED SETTLEMENT**

**A.    Relief for class members.**

The proposed settlement provides the following relief. First, pursuant to its revised Medical Policy effective November 12, 2019, Anthem will cover tumescent liposuction to treat lipedema when appropriate medical criteria are satisfied. (Ex. 1

at ¶ 5.) Anthem has agreed not to change its revised position on the covered status of tumescent liposuction unless such change is warranted by a change in the medical literature and medical community's views. (Ex. 1 at ¶ 5.) A copy of the revised Medical Policy is attached as Exhibit D to the Settlement Agreement. Class Counsel vetted the medical criteria listed in the revised Medical Policy with surgeons who perform tumescent liposuction. (Gianelli Decl., ¶ 10.)

All class members who have paid out-of-pocket for tumescent liposuction to treat their lipedema can make claims for reimbursement to the extent those out-of-pocket payments have not been paid by other insurance, Medicare, or other reimbursement sources for which the class member owes no reimbursement obligation. (Ex. 1. at ¶ 12.) If Anthem determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline, Anthem will reimburse the Class Member for the out-of-pocket expenses, subject to a reduction only for the cost-share the Class Member would have paid under the Class Member's contract with Anthem had that claim been initially approved as an in-network service. (*Id.*)

For class members who have not yet undergone tumescent liposuction, and are currently covered by Anthem, they can submit their requests for approval for the surgery pursuant to the terms of their existing Anthem contracts. (Ex. 1. at ¶ 13.) And while class members who have not yet received the surgery and are no longer covered by Anthem are ineligible for the surgery through Anthem, they release no claims and are free to make claim with any health plan they now have or will have in the future. (*Id*. at ¶ 8(q).)

If Anthem denies a claim for reimbursement or a request for surgery approval under the new guidelines, Anthem will comply with the adverse benefit determination and appeal provisions of ERISA. (Ex. 1 at ¶¶ 12-13.)

**B.    Released claims.**

The Settlement's release of claims provision bars the assertion, by any class

member, of any and all claims against Anthem arising out of: (1) any denial of any request for tumescent liposuction to treat lipedema by Anthem pursuant to the former Medical Policy and/or denied as "cosmetic"; and/or (2) the appropriateness of the criteria in the current Medical Policy. (Ex. 1 at p. 5, ¶ 9(q).)

Released Claims do not include any claims for reimbursement or claims for re-review that are denied after Final Approval. (*Id.*) Released Claims also do not include any claim by a Class Member who did not undergo tumescent liposuction and is currently not covered by Anthem. (*Id.*)

### C.    Notice.

The Parties agree that no later than forty-five (45) days after entry of the Preliminary Approval Order, a Settlement Administrator will mail notice of the proposed settlement to all class members as identified from Anthem's data search. (Ex. 1 at ¶ 20.)

### D.    Attorneys' fees.

If the Court preliminarily approves the settlement, Class Counsel will move for an award of attorneys' fees and costs. Anthem has agreed to pay class counsel no more than $434,500.00 in attorney fees and costs, subject to Court approval. (Ex. 1 at ¶ 16.) Goolsby will also apply for an incentive award in the amount of $15,000 for her work as class representative in this case. (*Id.*)

## IV.    ARGUMENT

### A.    The proposed class meets the requirements of Rule 23.

Goolsby seeks certification of the following settlement class:

All persons covered under ERISA health plans, self-funded or fully insured, that are administered by Anthem and whose claims for liposuction treatment of their lipedema were denied as cosmetic.

To maintain a class action under Rule 23, the requirements of Rule 23(a) must first be established. Under Rule 23(a), a class may be certified if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law

or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In addition to the Rule 23(a) requirements, at least one of the three subsections of Rule 23(b) must be met.

Here, Goolsby is seeking to certify the proposed class under Rule 23(b)(1) and Rule 23(b)(2).[1]

### 1.    Rule 23(a) requirements.

#### a.    Numerosity.

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. *Moeller v. Taco Bell Corporation*, 220 F.R.D. 604, 608 (N.D. Cal. 2004). Plaintiffs are not required to identify each and every potential member of the class or specify the exact number of potential class members. *Martial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Instead, plaintiffs need only provide a properly supported estimate. *Id*.

Following a diligent search of its data systems, Anthem reports that there are between 595 and 627 persons who may meet the class definition. (Declaration of

---

[1] Certification is not being sought under Rule 23(b)(3) because no class member is "*entitled* to an individualized award of monetary damages" under the terms of the proposed settlement agreement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011). Instead, Anthem will reimburse the class member for the out-of-pocket expenses *if* Anthem determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline. Thus, any monetary relief obtained by the class members is entirely conditional and incidental to the primary relief of claim processing. *See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-461 (9th Cir. 1996) ("[R]emand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination."); *Des Roches v. California Physicians' Service*, 320 F.R.D. 486, 508 (N.D. Cal. 2017) (in certifying ERISA class under FRCP 23(b)(2) held that under *Saffle*, the appropriate "final" remedy for class members with denied claims was to require insurer to reprocess benefit denials under revised guidelines); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 136-136 (N.D. Cal. 2016) (in certifying ERISA class under FRCP 23(b)(2) held injunctive relief that required defendant to re-process previously denied requests under a correct standard was appropriate relief).

Rachel Beaulieu, ¶ 4.) This estimate easily meets the numerosity threshold for an injunctive relief class. *Escalante v. California Physicians' Service*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (numerosity satisfied "even presuming a class of 19" due to the nature of relief sought). *See also Weiss v. New York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984); *Horn v. Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977); *McMillon v. State of Hawaii,* 261 F.R.D. 536, 543 (D. Haw. 2009) (finding the numerosity requirement satisfied where the putative class consisted of 10 identifiable members, as well as future, unidentified members); *Jackson v. Danberg*, 240 F.R.D. 145, 147 (D. Del. 2007) (16 members enough); *Bublitz v. E.I. Du Pont de Nemours and Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001) (17 members enough).

### b.    Commonality.

Rule 23(a)(2) requires that there be questions of law or fact that are common to the class. Rule 23 does not require that all questions of law and fact be common to all class members. *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008). In fact, only one question of law or fact must be common to the proposed class. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Here, the propriety of Anthem's denial of tumescent liposuction to treat lipedema during the relevant time period is unquestionably a common issue. In *Escalante v. California Physicians Service dba Anthem of California*, 309 F.R.D. 612, 618 (C.D. Cal. 2015), the court addressed a health plan's refusal to cover an analogous surgical procedure, lumbar ADR, and held that the commonality requirement was satisfied. The *Escalante* court's language and reasoning is fully applicable here:

> The Court concludes that there are common questions that have common answers relevant to the resolution of this case. In particular, Plaintiff's first question would result in an answer that goes to the heart of the resolution of Plaintiff's claims. Plaintiff is challenging Defendant's uniform policy of categorically denying coverage for lumbar ADR procedures.

Because Goolsby is challenging Anthem's categorical denial of tumescent liposuction to treat lipedema during the relevant time period as "cosmetic," there is a common question that has a common answer. Thus, the commonality element is satisfied.

### c.      Typicality.

Rule 23(a)(4) requires that the claims of the named plaintiff be typical of those of the class. The purpose of the typicality requirement is to "assure[ ] that the interest of the named representatives align with those of the class." *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986). Where, as here, "the challenged conduct is a policy or practice that affects all class members," the Ninth Circuit does "not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 868-869 (9th Cir. 2001)*, abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-505 (2005).

In this case, "the injuries [of the class members] are identical." *Armstrong*, *supra*, 275 F.3d at 869. Goolsby and all the proposed class members have suffered "the same or similar injury": they have been denied tumescent liposuction to treat their lipedema. *Escalante*, *supra*, 309 F.R.D. at 619. This common injury springs from the same "uniform course of conduct," namely, Anthem's categorical exclusion of tumescent liposuction to treat lipedema from coverage.  The typicality requirement is therefore satisfied.

### d.      Adequacy.

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. This prerequisite is primarily concerned with "the competency of class counsel and conflicts of interest." *Escalante*, *supra*, 309 F.R.D. at 619 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982). Resolution of two questions determines whether this requirement is met: (1)

do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Escalante*, *supra*, 309 F.R.D. at 619. *See also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

As set forth above, Goolsby's interests are co-extensive and do not conflict with the proposed class members' interests, and are typical of the claims of the other class members. Goolsby has an interest in vigorously prosecuting this case on behalf of the proposed class because he seeks benefits for tumescent liposuction to treat her lipedema. This explicitly advances the interests of the class.

Likewise, class counsel will vigorously prosecute this action on behalf of the class. Class counsel has significant experience in insurance litigation and class litigation. (Gianelli Decl. at ¶¶ 2-4.) Gianelli & Morris has successfully prosecuted numerous insurance class actions and, in particular, health insurance class actions alleging violations of statutory and/or contractual law. (*Id.*)

### 2.    Rule 23(b).

The next determination is whether this case fits one of the three subsections of Rule 23(b). The two subsections at issue are subsections (b)(1) and (b)(2).

### a.    Rule 23(b)(1).

Rule 23(b)(1) is divided into two subsections, Rule 23(b)(1)(A) and 23(b)(1)(B). Certification is proper herein under both subsections.

A class action is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions … would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." As explained in *Escalante*, "[t]his subsection covers actions where the party is obliged by law to treat the members of the class alike or where the party must treat all alike as a matter of practical necessity." *Escalante*, *supra*, 309 F.R.D. at 619-620 (internal quotations omitted). *See also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193

(9th Cir. 2001) (the phrase "incompatible standards of conduct" refers to the situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct").

Certification is also proper pursuant to Rule 23(b)(1)(B), which requires a showing that "adjudications with respect to individual class members … would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). ERISA requires that, where appropriate, plan provisions must be "applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). If this Court were to find that the terms of Anthem's EOCs required Anthem "to act in a certain fashion, ERISA would require [Anthem] to act in a similar fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario." *Z.D. ex rel. J.D. v. Group Health Cooperative*, 2012 WL 1977962 at *7 (W.D. Wash. June 1, 2012).

### b.    Rule 23(b)(2).

A class is proper under Rule 23(b)(2) if the party opposing the class has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole …" Fed.R.Civ. P. 23(b)(2). The key to certification under Rule 23(b)(2) is establishing uniform, class-wide conduct on the part of the defendant. *Parsons*, *supra*, 754 F.3d at 688. This requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class a whole." *Id*.; *See also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). "That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Parsons*, *supra*, 754 F.3d at 688.

12

1    In this case, Goolsby and the class members are all seeking declaratory and

2    injunctive relief to remedy the same conduct on the part of Anthem: Anthem's

3    uniform practice of improperly denying all requests and/or claims for tumescent

4    liposuction to treat lipedema as "cosmetic." Anthem applies this categorical bar in all

5    circumstances and to all members, regardless of the member's individual medical

6    profile. All members were affected by Anthem's policy and practice in the same

7    way: they were denied coverage for tumescent liposuction to treat their lipedema.

8    **B.    The proposed settlement warrants preliminary approval.**

9    The Ninth Circuit maintains a "strong judicial policy" that favors the

10   settlement of class actions. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276

11   (9th Cir. 1992). The settlement of a certified class action must be fair, adequate, and

12   reasonable. Fed. R. Civ. P. 23(e)(2).

13   Courts employ a two-step process in approving settlements under Rule 23(e).

14   A settlement is preliminarily approved for the purpose of providing notice to class

15   members and setting a final approval hearing date to make a final determination

16   about the settlement's fairness. At the final approval hearing the court grants or

17   denies final settlement approval after assessing the settlement's reasonableness and

18   any objections raised. *Manual for Complex Litigation, supra,* § 21.632.

19   The preliminary approval step requires the Court to "make a preliminary

20   determination on the fairness, reasonableness, and adequacy of the settlement terms .

21   . . ." *Manual for Complex Litigation, supra,* § 21.632. At this preliminary-approval

22   step, the Court must conduct a prima facie review of the relief provided by the

23   settlement and the proposed notice to determine that notice should be sent to the

24   Settlement class members. *Newberg on Class Actions*, § 13.13 (5th ed. 2016)

25   ("Bearing in mind that the primary goal at the preliminary review stage is to

26   ascertain whether notice of the proposed settlement should be sent to the class, courts

27   sometimes define the preliminary approval standard as determining whether there is

28   'probable cause' to submit the [settlement] to the class members and [to] hold a full-

13

1   scale hearing as to its fairness.")

2        Preliminary approval of a settlement should be granted if the proposed

3   settlement falls within the range of what could be found "fair, adequate and

4   reasonable" so that notice may be given to the proposed class and a hearing for final

5   approval can be scheduled. *Officers for Justice*, *supra*, 688 F.2d at 625. The Court's

6   review is "limited to the extent necessary to reach a reasoned judgment that the

7   agreement is not the product of fraud or overreaching by, or collusion between the

8   negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

9   adequate to all concerned." *Id.* at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d

10  1011, 1027 (9th Cir. 1998). This is a minimal threshold:

> Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *In re Tableware Antitrust* Litig., 484 F.Supp.2d 1078, 1079 (N.D.Cal.2007) (citation omitted).

*Otey v. CrowdFlower, Inc.*, 2014 WL 1477630, *10 (N.D. Cal. 2014).

        Here, the proposed settlement satisfies the standard for preliminary approval, as there is no question that it was negotiated in good faith and presents a fair, reasonable, and adequate resolution of this certified class.

### 1.   The settlement is the product of good faith, informed, arm's-length negotiations between experienced counsel.

        Goolsby is represented by counsel who have extensive experience in the litigation of insurance class actions and have successfully prosecuted other class actions over policyholders' rights to health benefits. (Gianelli Decl. at ¶¶ 2-4.) Anthem's counsel is a firm that has expertise in health care matters and that regularly represents Anthem and other health plans.

In addition to participating in formal discovery, Class Counsel engaged in extensive investigation regarding Anthem's bases for refusing to cover tumescent liposuction to treat lipedema, engaged in extensive investigation and research regarding the safety and effectiveness of tumescent liposuction to treat lipedema, and consulted with experts on tumescent liposuction to treat lipedema and the corresponding body of medical literature addressing this topic. (Gianelli Decl. at ¶¶ 14-16.)

To assist in their settlement efforts, the parties attended a mediation before an experienced mediator on July 16, 2019. (Gianelli Decl. at ¶ 17.) Following the mediation, the parties continued their negotiations through in person meetings and telephone conferences with the mediator. (*Id.*, ¶ 18.) The negotiations were intense and at arms'-length and, ultimately, resulted in a settlement that provides the class with the relief requested in the Complaint. (*Id.*, ¶¶ 18-19.) Accordingly, the settlement reached in this matter represents the end-result of an adversarial process where the interests of the class were vigorously and fully represented by Class Counsel.

> ## 2. The settlement obtains the relief sought by the class demonstrating beyond question that the Settlement is within the range of reasonableness.

This case was brought because Anthem denied all requests for tumescent liposuction to treat lipedema as "cosmetic" despite the fact that the purpose of the surgery is to treat lipedema—a progressive, debilitating disease—not to make patients look better. Goolsby was denied coverage for tumescent liposuction to treat her lipedema for this reason. This case sought an injunction requiring Anthem to provide notice to members who have had requests for tumescent liposuction to treat their lipedema, to re-review the denied claims under the proper standard, and make payment where appropriate. (Dkt. 1 at ¶ 61.)

///

15

The proposed settlement effectively provides the relief requested. All class members who have paid out-of-pocket for tumescent liposuction to treat their lipedema can make claims for reimbursement to the extent those out-of-pocket payments have not been paid by other insurance, Medicare, or other reimbursement sources for which the class member owes no reimbursement obligation. If Anthem determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline, Anthem will reimburse the Class Member for the out-of-pocket expenses. (Ex. 1 at ¶ 12.)

For class members who have not yet undergone tumescent liposuction, and are currently covered by Anthem, they can submit their requests for approval for the surgery pursuant to the terms of their existing Anthem contracts.  (Ex. 1 at ¶ 13.)

### 3.    No preferential treatment for the class representative.

As part of the Settlement, Goolsby receives the same benefit as other class members. His request for reimbursement of expenses incurred for tumescent liposuction will be submitted to Anthem for reimbursement under the revised Medical Policy that will now cover tumescent liposuction to treat lipedema under appropriate eligibility criteria.

The proposed settlement also provides that Goolsby will receive an incentive award of $15,000. (Ex. 1 at ¶ 14.) This is a reasonable amount given Goolsby's efforts in pursuing the obtained relief for the class.

### 4.    The views of experienced counsel.

Goolsby's counsel are experienced in cases of this nature having certified and tried cases against health plans over their refusals to provide benefits. *Gallimore v. Kaiser Foundation Health Plan, Inc.*, Alameda Superior Court, Case No. RG12616206 (judgment obtained for class against California's largest health plan over its systematic denial of reconstructive surgery benefits); *Arce v. Kaiser Foundation Health Plan, Inc.*, Los Angeles Superior Court, Case No. BC388689 (recovery of benefits from health plan for class of autistic children); *Escalante v.*

*California Physicians Service dba Blue Shield of California* (C.D. Cal.) Case No. 2:14-CV-3021 (reversal of health insurer's position on lumbar artificial disc replacement surgery); *Ticconi v. Blue Shield Life & Health Ins. Co.*, Los Angeles Superior Court, Case No. BC330989 (reversal of health insurer's practice of rescinding policies). (Gianelli Decl., ¶ 3.)

It is the view of class counsel that the settlement is reasonable, fair, and adequate. (Gianelli Decl. at ¶ 19.) The Settlement should be preliminarily approved.

## V.    PROPOSED SCHEDULE

Based on the foregoing, Goolsby respectfully requests that the Court set the following schedule for the dissemination of the class notice and the setting of the final approval hearing in this case:

| Event | Event Date |
| --- | --- |
| Anthem provides the notice required under the Class Action Fairness Act pursuant to 28 U.S.C. § 1715. | Within 10 days after Plaintiff files a motion for preliminary approval |
| Anthem provides mailing data for Class Members to the Settlement Administrator | 30 days from the date of the Preliminary Approval Order |
| Class Counsel files a motion for an award of attorneys' fees and costs and class representative incentive award | 30 days from the date of the Preliminary Approval Order |
| The Administrator mails the notice of the proposed Settlement | 45 days from the date of the Preliminary Approval Order |
| Deadline for postmarking of exclusions and objections | 80 days from the date of the Preliminary Approval Order |
| Deadline for postmarking and filing requests to be heard at the Final Approval Hearing | 90 days from the date of the Preliminary Approval Order |
| Class Counsel to file a motion for final approval | 28 days prior to the Final Approval Hearing |
| Final Approval Hearing | To be set by the Court, no earlier than 120 days from the date of the Preliminary Approval Order |

///

17

## VI.    CONCLUSION

For the reasons set forth above, Goolsby respectfully requests that the Court certify the class for settlement purposes, appoint Gianelli & Morris as class counsel and Robin Goolsby as the class representative, preliminarily approve the proposed settlement, direct that notice be sent to class members, and set a Final Approval Hearing.

DATED: April 17, 2020                           GIANELLI & MORRIS


                                  By:    */s/ Adrian J. Barrio*
                                         ROBERT S. GIANELLI
                                         JOSHUA S. DAVIS
                                         ADRIAN J. BARRIO
                                         Attorneys for Plaintiff