ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
HOWARD LORING ROSE, #251727
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com
loring.rose@gmlawyers.com

Attorneys for Plaintiff
ROBIN GOOLSBY,
on behalf of herself and all others
similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN GOOLSBY, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>ANTHEM, INC.; ANTHEM UM SERVICES, INC.,<br><br>    Defendants. | Case No.: 2:19-cv-00392-DSF (KSx)<br>Assigned to Hon. Dale S. Fisher, Dep. 7D<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:    September 28, 2020<br>TIME:    1:30 p.m.<br>PLACE:  Courtroom 7D<br><br>Complaint Filed: January 17, 2019 |

# TABLE OF CONTENTS

*Page Number*

MEMORANDUM OF POINTS AND AUTHORITIES..................................................1

I. INTRODUCTION..........................................................................................1

II. SUMMARY OF THE LITIGATION.............................................................2

III. THE SETTLEMENT SHOULD BE FINALLY APPROVED.........................2

    A. The Class Notice was adequate and effective............................................3

        1. The Administrator has provided the best practicable notice of the settlement to the Class Members in the manner directed by this Court...........................................................3

        2. The Class Notice adequately informed Class Members of the Settlement..........................................................................4

    B. The Settlement is fundamentally, fair, adequate and reasonable..............5

        1. Strength of the class claims............................................................5

        2. Risk and expense of further litigation.............................................7

        3. Risk of maintaining class action status through trial......................7

        4. Amount and benefits of the Settlement..........................................7

        5. Extent of discovery and state of proceedings, including the absence of collusion...................................................................9

        6. Experience and views of counsel..................................................11

        7. The reaction of the Class has been overwhelmingly positive and strongly supports approval........................................11

    C. The CAFA requirements have been satisfied..........................................12

IV. CONCLUSION..............................................................................................13

# TABLE OF AUTHORITIES

**CASES**                                                                                                      *Page Number(s)*

*Bayat v. Bank of the West*,
  No. C–13–2376 EMC, 2015 WL 1744342 (N.D. Cal. April 15, 2015)..............7

*Churchill Village, LLC v. General Electric*,
  361 F.3d 566 (9th Cir. 2004)...................................................................................4

*Class Pls. v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)................................................................................5

*Davis v. City & Cnty. of San Francisco*,
  890 F.2d 1438 (9th Cir.1989)..................................................................................5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)............................................................................7,12

*In re Integra Realty Res., Inc.*,
  262 F.3d 1089 (10th Cir. 2001)...............................................................................4

*In re Mego Financial Corp. Securities Litigation*,
  213 F.3d 454 (9th Cir. 2000)...................................................................................5

*In re Pacific Enterprises Securities Litigation,*
  47 F.3d 373 (9th Cir. 1995)...................................................................................11

*In re Syncor ERISA Litigation*,
  516 F.3d 1095 (9th Cir. 2008).................................................................................3

*In re TOYS "R" US-DELAWARE, INC.*,
  295 F.R.D. 438 (C.D. Cal. 2014)..........................................................................11

*Lane v. Brown*,
  166 F.Supp.3d 1180 (D. Or. 2016).......................................................................8,9

*Monterrubio v. Best Buy Stores, LP.*,
  291 F.R.D. 443 (E.D. Cal. 2013).............................................................................3

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950).................................................................................................3

*Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004).................................................................2,5,9,10

*Officers for Justice v. Civil Service Commission*,
  688 F.2d 615 (9th Cir. 1982)...................................................................................3

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009).................................................................................11

*Ross v. A.H. Robins*,
  700 F.Supp. 682 (S.D.N.Y. 1988).........................................................................12

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*,
  85 F.3d 455 (9th Cir. 1996)..................................................................................9

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir.1993)....................................................................................5

**STATUTES**

28 U.S.C.

  § 1715...................................................................................................................12

Federal Rules of Civil Procedure

  Rule 23........................................................................................................2,4,5,13

**TREATISE**

MANUAL FOR COMPLEX LITIGATION, THIRD § 30.14 (1995)........................2

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on September 28, 2020 at 1:30 p.m. in Courtroom 7D of the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiff will move the Court under Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, and 29 U.S.C. section 1132(g)(1), for an order: (1) finding that the Class Notice has been adequate and reasonable, met the requirements of Rule 23, and has constituted the best notice practicable under the circumstances; (2) granting final approval of the proposed class action Settlement; and (3) directing entry of Final Judgment, dismissing the action (including all individual and class claims presented thereby) on the merits with prejudice.

This Motion is based on this Notice of Motion and Motion, the attached memorandum of points and authorities in support thereof, and the Declaration of Jason M. Stinehart Re: Mailing of Notices of Proposed Settlement of Class Action and Final Approval Hearing. This Motion is also based on Plaintiffs' Motion for Approval of Attorneys' Fees and Class Representative Service Awards ("Fee Motion"), filed June 18, 2020; the declarations and exhibits submitted in support of the Fee Motion; the entire record in this proceeding, including but not limited to the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and the declarations and exhibits in support thereof; the Court's findings and conclusions contained in its Preliminary Approval Order; the Court's files and records in this matter; and upon such other matters as may be presented at the time of the hearing.

DATED: August 21, 2020                GIANELLI & MORRIS

By:   */s/ Adrian J. Barrio*
ROBERT S. GIANELLI
JOSHUA S. DAVIS
ADRIAN J. BARRIO
HOWARD LORING ROSE
Attorneys for Plaintiff
ROBIN GOOLSBY

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On May 19, 2020, the Court preliminarily approved the Settlement Agreement ("the Settlement") between Plaintiff Robin Goolsby ("Plaintiff"), on the one hand, and Defendants Anthem, Inc. and Defendants Anthem UM Services, Inc. (jointly, "Anthem" or "Defendants"), on the other, finding it fair, adequate, reasonable, and within the realm of possible final approval. (Dkt. 39.) Nothing has occurred since then to deviate from that finding.

Plaintiff respectfully requests the Court to finally approve the Settlement, which followed major policy changes from Anthem directly resulting from this litigation. Some eleven months after this action was filed, Anthem changed its "cosmetic" coverage position with respect to tumescent liposuction to treat lipedema to provide that such treatment is medically necessary and covered if certain criteria are met.

Anthem's post-litigation reversal of its coverage position is built into the Settlement. Anthem has agreed not to change its revised position on the status of tumescent liposuction unless such change is warranted by a change in the medical literature and medical community's views.

In addition, Anthem will: 1) allow Anthem members whose requests for tumescent liposuction to treat lipedema were previously denied to have those requests re-reviewed under a revised coverage guideline known as a "Medical Policy"; and 2) review future requests for tumescent liposuction to treat lipedema under the revised Medical Policy.

The Settlement represents the end-result of an adversarial process where the interests of the class were vigorously and fully represented by Class Counsel. This fulsome process, comprised of extensive, arms-length negotiations and independent investigation, yielded a Settlement that provides substantially all of the relief requested in the Complaint. There can be no question that, in reaching the Settlement,

1

the parties were made aware of the strengths and weaknesses of the claims and defenses and well positioned to assess the fairness, adequacy, and reasonableness of the Settlement against the risks and uncertainties of continued litigation.

As required by the relevant Ninth Circuit authority and Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement is fundamentally fair, adequate and reasonable. In addition, the Class Notice satisfies Rule 23(c)(2)(B) and (e)(1)(B), and has provided the best notice practicable under the circumstances. Accordingly, the Court should issue a final order and judgment certifying the Class and granting final approval of the Settlement.

## II. SUMMARY OF THE LITIGATION

For a history of the litigation, summary of the settlement negotiations, and a discussion of the settlement terms, see Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and the declaration of Class Counsel filed in support of that motion, and Plaintiffs' Motion for Approval of Attorneys' Fees and Class Representative Service Award (Fee Motion). (Dkt. 36 at pp. 9-15; Dkt. at ¶¶ 6-19; Dkt. 40 at pp. 7-12.)[1]

## III. THE SETTLEMENT SHOULD BE FINALLY APPROVED

Rule 23(e)(1)(A) requires that the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Approval under Rule 23 involves a two-step process "in which the [c]ourt first determines whether a proposed class action deserves preliminary approval and then, after notice is given to the class members, whether final approval is warranted." *Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.14, at 236-37 (1995). The Ninth Circuit has noted that, in considering whether to

---

[1] Page references for documents filed and appearing on the Court's docket are to the pagination at the top of the document automatically provided by the federal courts' Case Management/Electronic Case Files (CM/ECF) system upon electronic filing of the document.

2

finally approve a settlement, "there is a strong judicial policy that favors settlements, particularly where class action litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation.") *cert denied*, 495 U.S. 1217 (1983).

Here, this Court preliminarily approved the Settlement on May 19, 2020. As explained below, notice has been given to the Class Members in accordance with the Court's directions. The Class Administrator has received zero objections and zero requests for exclusion. Nothing has changed which would cause this Court to deviate from its preliminary finding.

**A.  The Class Notice was adequate and effective.**

**1.  The Administrator has provided the best practicable notice of the settlement to the Class Members in the manner directed by this Court.**

Rule 23(e) requires that "notice of the proposed dismissal and compromise [of a class action] shall be given to all members of the class in such a manner as the court directs." Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is "reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Monterrubio v. Best Buy Stores, LP.*, 291 F.R.D. 443, 452 (E.D. Cal. 2013) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

In its May 19, 2020 Order Preliminarily Approving the Class Settlement, the Court approved the notice provisions in paragraphs 20-25 of the Settlement, and the form of the Class Notice attached to the Settlement as Exhibit A. (Dkt. 39 at p. 3, ¶ 9; p. 4, ¶ 5.) The Court further appointed Rust Consulting ("Rust") as the Settlement Administrator and directed it to mail the Class Notice to the identified Class

Members by first-class mail, postage pre-paid, to his or her last known address no later than 45 days after entry of the order. (*Id*. at p. 4, ¶¶ 7, 8.)

Pursuant to the Preliminary Approval Order, the Administrator provided Class Notice to the 593 identified *Goolsby* Class Members by mail, as detailed in the declaration of Rust Program Manager Jason M. Stinehart. (Stinehart Decl. at ¶¶ 6-7 .) As of August 21, 2020, 35 notices had been returned as undeliverable. (*Id*. at ¶ 7.) However, Rust re-mailed 30 Class Notices based on updated addresses through address searches performed by Rust. (*Id*.) Thus, 588 of the 593 class members (99.2%) received the Class Notice. That is more than sufficient to satisfy Rule 23(c). *See, e.g., In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-1118 (10th Cir. 2001) (Rule 23 and due process satisfied where 77% of class members received notice of settlement.).

### 2. The Class Notice adequately informed Class Members of the Settlement.

Notice is satisfactory if it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. General Electric,* 361 F.3d 566, 575 (9th Cir. 2004). In addition, Rule 23(h)(1) requires that notice of Class Counsel's request for attorneys' fees be "directed to class members in a reasonable manner." The *Goolsby* Class Notice easily satisfies these requirements.

The Class Notice clearly and concisely states in plain, easily understood language the nature of the action, the defined Class, the class claims, issues and defenses, the terms of the Settlement, including attorneys' fees paid to Class Counsel, that a Class Member may object to the Settlement, that the Court will exclude anyone from the *Goolsby* Class who requests exclusion, the time and manner for requesting exclusion or objecting to the Settlement, and the binding effect of a class judgment on members under Rule 23(c)(3). (*See* Ex. A to Stinehart Decl.) Thus, the Class Notice adequately informed Class Members of the proposed Settlement.

**B.   The Settlement is fundamentally, fair, adequate and reasonable.**

The Ninth Circuit has interpreted Rule 23(e) to require the district court to determine whether a proposed settlement is "fundamentally fair, adequate and reasonable." *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 458 (9th Cir. 2000). To make this determination, courts "may consider some or all of the following factors," including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* In addition, the settlement cannot be the product of collusion among the negotiating parties. *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992).

Not all factors will apply to every class action settlement, and certain factors may predominate depending on the nature of the case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.1993). "The degree of importance attached to each factor is determined by the nature of the claim, the type of relief sought and the facts and circumstances of each case." *Davis v. City & Cnty. of San Francisco*, 890 F.2d 1438, 1444–45 (9th Cir.1989).

**1.   Strength of the class claims.**

A key factor in considering the reasonableness of a settlement "is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks and citation omitted). However, the court's role is not "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice, supra,* 688 F.2d at 625.

Plaintiff's position that Anthem wrongly refused to cover tumescent liposuction to treat lipedema on "cosmetic" grounds is strong. Anthem's plans exclude coverage for services defined as "cosmetic," i.e., services "that are primarily intended to preserve or improve appearance." (Dkt. 27 at para. 15.) Conversely, Anthem's polices provide coverage for "medically necessary" services, i.e., services "that can reasonably be expected to improve [a] physical functional impairment." (Dkt. 27 at para. 18.)

Tumescent liposuction, when used to treat lipdema, does not meet the "cosmetic" definition. It is a medically necessary treatment because the purpose of the surgery is to treat a progressive, debilitating disease—lipedema—not make patients look better. Lipedema is a rare condition that is chronic, progressive, painful, and immobilizing. It involves an abnormal buildup of adipose (fat) tissue, usually in the lower body but sometimes in the arms. The functional problems caused by lipedema—which include pain, mobility problems, joint disorders, and other physical problems that prevent patients from engaging in the activities of daily living—are well documented in the medical literature.

Numerous clinical studies, which have been shared with Anthem, show that tumescent liposuction relieves the symptoms of lipedema. In addition, the American Society of Plastic Surgeons (ASPS) has endorsed the efficacy of tumescent liposuction in treating the localized adipose deposits that typify lipedema. The medical evidence is overwhelming that tumecent liposuction serves a valid therapeutic function and is not "cosmetic."

Finally, the medical devices used to perform tumescent liposuction are themselves approved by the Food and Drug Adminstration ("FDA"). Thus, tumescent liposuction is not only effective in treating the symptoms of lipedema, it has been proven to be safe under the FDA's rigorous approval processes.

///
///

### 2. Risk and expense of further litigation.

Despite the strength of Plaintiff's position, had this case not settled, the parties faced an expensive, multi-week trial. Indeed, although the parties "had already incurred significant litigation expenses, the cost of preparing for and handling the trial with a number of expert witnesses on both sides would have been enormous." *Lane v. Brown*, 166 F.Supp.3d 1180, 1189 (D. Or. 2016). Moreover, "no matter who won at trial, an appeal was likely, adding further costs." *Id*. Finally, even if Plaintiff and the class prevailed, "the precise nature and scope of relief ordered by the court may not have been as comprehensive or detailed as contained in the Agreement and could have taken potentially many more years to implement." *Id*. The risk and expense of further litigation thus weigh in favor of approval. *Id*.

### 3. Risk of maintaining class action status through trial.

The parties' settlement eliminates any risk of decertification and "immunizes the class certification order from attack by [Anthem]." *Lane, supra*, 166 F.Supp.3d at 1189. This factor weighs in favor of approval. *Id*.

### 4. Amount and benefits of the Settlement.

"[T]he critical component of any settlement is the amount of relief obtained by the class." *Lane, supra*, 166 F.Supp.3d at 1189 (quoting *Bayat v. Bank of the West*, No. C–13–2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. April 15, 2015)). A settlement that provides for "comprehensive and substantial" injunctive relief weighs strongly in favor of approval. *Lane, supra*, 166 F.3d at 1189 (approving injunctive relief settlement that, among other things, required the State of Oregon to "create and implement a number of policies and practices to facilitate compliance with the [Americans with Disabilities Act of 1990]"). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (approving injunctive relief settlement that "obligate[d]" the defendant to "make [its] minivans safe").

///

///

This case was brought because Anthem denied all requests for tumescent liposuction to treat lipedema as "cosmetic" despite the fact that the purpose of the surgery is to treat lipedema—a progressive, debilitating disease—not to make patients look better. Goolsby was denied coverage for tumescent liposuction to treat her lipedema for this reason. This case sought an injunction requiring Anthem to provide notice to members who have had requests for tumescent liposuction to treat their lipedema denied, to re-review the denied claims under the proper standard, and make payment where appropriate. (Dkt. 1 at ¶ 61.)

The Settlement provides substantially all of the relief requested. First, pursuant to its revised Medical Policy effective November 12, 2019, Anthem will cover tumescent liposuction to treat lipedema when appropriate medical criteria are satisfied. (Dkt. 36-1 at Ex. 1, ¶ 5.) Anthem has agreed not to change its revised position on the covered status of tumescent liposuction unless such change is warranted by a change in the medical literature and medical community's views. (*Id*. at ¶ 5.)

All class members who have paid out-of-pocket for tumescent liposuction to treat their lipedema can make claims for reimbursement to the extent those out-of-pocket payments have not been paid by other insurance, Medicare, or other reimbursement sources for which the class member owes no reimbursement obligation. (Dkt. 36-1 at Ex. 1, ¶ 12.) If Anthem determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline, Anthem will reimburse the Class Member for the out-of-pocket expenses, subject to a reduction only for the cost-share the Class Member would have paid under the Class Member's contract with Anthem had that claim been initially approved as an in-network service. (*Id*.)

For class members who have not yet undergone tumescent liposuction, and are currently covered by Anthem, they can submit their requests for approval for the surgery pursuant to the terms of their existing Anthem contracts. (*Id*. at ¶ 13.) And

while class members who have not yet received the surgery and are no longer covered by Anthem are ineligible for the surgery through Anthem, they release no claims and are free to make claim with any health plan they now have or will have in the future. (*Id*. at ¶ 8(q).)

If Anthem denies a claim for reimbursement or a request for surgery approval under the new guidelines, Anthem will comply with the adverse benefit determination and appeal provisions of ERISA. (*Id*. at ¶¶ 12-13.)

Thus, the Settlement provides "comprehensive and substantial" injunctive relief to the *Goolsby* Class and weighs strongly in favor of approval. *Lane*, *supra*, 166 F.3d at 1189. It cements a sea change in Anthem's coverage position regarding tumescent liposuction to treat lipedema, accomplishing the fundamental purpose of the subject lawsuit. It also guarantees class members the opportunity for reimbursement or re-review of their tumescent liposuction claims under Anthem's revised coverage position. Reprocessing under the correct standard is the *only* appropriate relief under ERISA for class members whose requests for L-ADR were previously and wrongfully denied as "unproven." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-461 (9th Cir. 1996) (reprocessing is appropriate injunctive relief for denial of plan benefits when an ERISA administrator applies the wrong standard to a benefit determination.)

### 5. Extent of discovery and state of proceedings, including the absence of collusion.

The extent of discovery completed and the state of the proceedings at the time of settlement is an indicator of whether the parties have a sufficient understanding of each other's cases to make an informed judgment about their likelihood of prevailing. Typically, "[a] court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomm. Coop.*, *supra*, 221 F.R.D. at 527 (internal quotation marks and citation

omitted). For that reason, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Id.* at 528.

The parties' settlement occurred over a year after this action was filed and was well informed by the discovery and investigation completed up to that point. (Gianelli Decl., ¶ 14.) As noted above, shortly after this action was filed, the parties entered into informal yet intensive settlement negotiations that lasted several months. (*Id.*) As part of these settlement efforts, the parties exchanged substantial information on an informal basis regarding the class and merits issues of this case. (*Id.*)

In addition, from the inception of this action (and indeed as a precursor to the filing of this action), Plaintiff's counsel met and extensively conferred with experts concerning the efficacy of tumescent liposuction to treat lipedema and the medical literature addressed to this topic. (*Id.*, ¶ 15.) As part of the informal settlement negotiations, the parties exchanged information concerning the efficacy of tumescent liposuction to treat lipedema. (*Id.*)

Plaintiff's informal fact gathering was supplemented by formal discovery efforts. (*Id.*, ¶ 16.) Beginning in February of 2019, Plaintiff served comprehensive discovery (inspection demands, interrogatories, and requests for admissions) addressed to the class and merits issues in this case. (*Id.*) At the time of settlement, Anthem had produced over 450 pages of responsive information, in addition to interrogatory responses and responses to Plaintiff's requests for admissions. (*Id.*) Plaintiff's counsel also took the deposition of Anthem's corporate designee ("Person Most Knowledgeable") to address the class data issues. (*Id.*)

Accordingly, the settlement was reached after the parties achieved "a full understanding of the legal and factual issues surrounding the case," and represents the end-result of an adversarial process where the interests of the *Goolsby* Class was vigorously and fully represented by Class Counsel. *Nat'l Rural Telecomm. Coop.*, *supra*, 221 F.R.D. at 527.

"Nor is there any dispute that counsel had considerable experience in litigating … class actions, and other complex litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Plaintiff and the Class are represented by counsel who have extensive experience in the litigation of insurance class actions and have successfully prosecuted other class actions over policyholders' rights to health benefits. (Dkt. 40-1 at ¶¶ 2-5; Dkt. 36-1 at ¶¶ 2-5.) Anthem is represented by the law firm of Reed Smith LLP, a firm that has expertise in health care matters and that regularly represents Anthem and other health plans.

The Ninth Circuit has held that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]" *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, this factor weighs in favor of approval.

### 6. Experience and views of counsel.

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re TOYS "R" US-DELAWARE, INC.*, 295 F.R.D. 438, 455 (C.D. Cal. 2014). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises, supra,* 47 F.3d at 378.

As set forth in the declarations submitted with the Preliminary Approval Motion and Fee Motion, Class Counsel has extensive experience prosecuting insurance class actions, and has represented policyholders in a number of published insurance law decisions. (Dkt. 40-1 at ¶¶ 2-5; Dkt. 36-1 at ¶¶ 2-5.) Class Counsel's belief that the proposed Settlement is fair, adequate and reasonable weighs in favor of approval.

### 7. The reaction of the Class has been overwhelmingly positive and strongly supports approval.

The parties have received zero requests for exclusion and zero objections to the proposed Settlement. (Stinehart Decl. at ¶¶ 10, 11.) This is itself strong evidence

of the Settlement's fairness. *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *see also*, *Ross v. A.H. Robins*, 700 F.Supp. 682, 684 (S.D.N.Y. 1988) ("[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement."). The overwhelmingly positive reaction of the Class Members is strong evidence that the Settlement is fundamentally fair, adequate and reasonable.

### C. The CAFA requirements have been satisfied.

The Class Action Fairness Act of 2005 ("CAFA") requires defendants who settle federal class actions to "serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official...." 28 U.S.C. § 1715(b). As explained in Senate Report 109-14 from the Senate Judiciary Committee, this section "is designed to ensure that a responsible state and/or federal official receives information about proposed class action settlements and is in a position to react if the settlement appears unfair to some or all class members or inconsistent with applicable regulatory policies." S. Rep. No. 109-14, at 32 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3.

Pursuant to the requirements of CAFA, on April 27, 2020, the Class Administrator (Rust) notified "117 State Insurance Commissioners, along with the Attorneys General for all U.S. states, as well as … the U.S. Attorney General" (hereinafter, "the CAFA entities") of the Settlement. (Stinehart Decl. at ¶¶ 4.) Rust has received no response to the notice of settlement served upon the CAFA entities. (Stinehart Decl. at ¶ 5.)

CAFA further provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)." 28 U.S.C. § 1715(d). Based on the April 27, 2020 service date, above, the 90-day CAFA notice period expired on July 26, 2020.

The Final Approval Hearing is set for September 28, 2020. Thus, a court order granting final approval will necessarily occur after the expiration of the 90-day CAFA notice period.

## IV.   CONCLUSION

For all of the reasons set forth above, Plaintiff respectfully requests that this Court issue an Order: (1) finding that the Class Notices were adequate and reasonable, met the requirements of Rule 23, and constituted the best notice practicable under the circumstances; (2) granting final approval of the Settlement; and (3) directing entry of Final Judgment, dismissing the Action (including all individual and class claims presented thereby) on the merits with prejudice.

DATED: August 21, 2020                         GIANELLI & MORRIS

                                               By:   */s/ Adrian J. Barrio*
                                                     ROBERT S. GIANELLI
                                                     JOSHUA S. DAVIS
                                                     ADRIAN J. BARRIO
                                                     Attorneys for Plaintiffs